Brian K. Cline, State Bar No. 246747
brian@clineapc.com
Julian D. Lopez, State Bar No. 323344
julian@clineapc.com
**CLINE, APC**
7855 Ivanhoe Avenue, Suite 408
La Jolla, California 92037
858/373.9337

Attorneys for Plaintiffs CALVIN
KALASHO and MATTHEW PUTRUS

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALVIN KALASHO and MATTHEW PUTRUS,<br><br>                     Plaintiffs,<br><br>          v.<br><br>BMW OF NORTH AMERICA, LLC; and DOES 1 to 10, inclusive,<br><br>                     Defendants. | Case No. 3:20-cv-01423 CAB (AHGx)<br><br>**OPPOSITION TO MOTION TO COMPEL ARBITRATION**<br><br>Date:    December 28, 2020<br>Per Chambers Rules, No Oral Argument Unless Separately Ordered by the Court<br><br>Judge:   Hon. Cathy Ann Bencivengo<br>Crtrm.:  4C<br><br>Discovery Cutoff:  2/5/21<br>Motion Cutoff:     6/30/21<br>Trial Date:        12/13/21 |

## **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................6

II. RELEVANT FACTS .........................................................................................6

III. EVEN IF BMW COULD INVOKE THE ARBITRATION CLAUSE, THE CLAUSE IS INVALID AND UNENFORCEABLE ...................................................9

IV. BMW IS NOT ENTITLED TO INVOKE THE ARBITRATION CLAUSE IN THE LEASE AGREEMENT .................................................................................11

    A.    FAA Principles.............................................................................11

    B.    The Express Terms of the Lease Agreement and Warranty Refute BMW's Third-Party Beneficiary Argument.......................................................13

    C.    Equitable Estoppel Does Not Apply ...........................................15

1

## TABLE OF AUTHORITIES

2

STATE COURT CASES

3

Azteca Constr., Inc. v. ADR Consulting, Inc.,

4

    121 Cal. App. 4th 1156, 1165 (2004) ............................................................... 9, 10

5

Cf. Cronus Investments, Inc. v. Concierge Services, 35 Cal. 4th 376, 393 (2005) .. 10

6

Epitech, Inc. v. Kann, 204 Cal. App. 4th 1365, 1372 (2012) .................................. 14

7

Goldman v. KPMG, LLP, 173 Cal. App. 4th 209, 219 (2009) ........................... 15, 17

8

Metalclad Corp. v. Ventana Environmental Organizational Partnership,

9

    109 Cal. App. 4th 1705, 1713 ................................................................................ 17

10

Ovitz v. Shulman, 133 Cal. App. 4th 830, 851 (2005) ............................................. 10

11

Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC,

12

    55 Cal. 4th 223, 236 (2012) ................................................................................... 11

13

Souza v. Westlands Water Dist., 135 Cal. App. 4th 879, 891 (2006) ...................... 14

14

FEDERAL CASES

15

Britton v. Co-op Banking Grp., 4 F.3d 742, 744 (9th Cir. 1993) ............................. 11

16

Capitol City Amusements v. Zamperla, Inc.,

17

    2018 U.S. Dist. LEXIS 36950, *5 (E.D. Cal. Mar. 6, 2018) ................................. 12

18

Chiron Corp. v. Ortho Diagnostic Sys., Inc.,

19

    207 F.3d 1126, 1130 (9th Cir. 2000) .................................................................... 11

20

Comedy Club, Inc. v. Improv W. Assocs., 553 F.3d 1277, 1287 (9th Cir. 2009) .... 11

21

First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995) ................. 11, 12

22

In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prods. Liab.Litig.,

23

    2011 U.S. Dist. LEXIS 162846, *14 (C.D. Cal. Dec. 20, 2011) ........................... 14

24

Kramer v. Toyota Motor Corp.,

25

    705 F.3d 1122, 1126, U.S. App. LEXIS 2090, *9 ......................................... *passim*

26

Lanning v. BMW of North America, LLC, 2019 U.S. Dist. LEXIS 193118, *9 ..... 13

27

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 626 (1985) ... 11

28

Momot v. Mastro (9th Cir. 2011) 652 F.3d 982, 986 ............................................... 11

1   Norcia v. Samsung Telcoms. Am., LLC,
2       845 F.3d 1279, 1291, 2017 U.S. App. LEXIS 956, *26 .......................... 12, 13, 16
3   Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.,
4       636 F.2d 51 (3d Cir. 1980) ................................................................................. 12
5   Rent-A-Center, West, Inc. v. Jackson,
6       561 U.S. 63, 67 (2010)....................................................................................... 11
7   Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.,
8       6 Cal. 5th 59, 73 ............................................................................................... 10
9   Three Valleys and Concat LP v. Unilever, PLC,
10      350 F. Supp. 2d 796, 804 (N.D. Cal. 2004).......................................................... 12
11  Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.,
12      925 F.2d 1136, 1141, 1991 U.S. App. LEXIS 1505 (9th Cir. 1991) ................... 12
13  United Steelworkers v. Warrior & Gulf Navigation Co.
14      363 U.S. 574, 582 (1960) .................................................................................... 11
15  Vincent v. BMW of N. Am., LLC, No. 19cv6439 AS,
16      2019 WL 8013093, at *9-10 (C.D. Cal. Nov. 26, 2019).................................... 14
17  Volt Info. Sciences v. Leland Stanford Jr. U., 489 U.S. 468, 476 (1989).............9, 11
18                          CALIFORNIA STATE STATUTES
19  Cal. Arb. Act, Code Civ. Proc. sections 1280, et seq...................................................8
20  Cal. Civ. Code § 1286.2....................................................................................... 10
21  Cal. Civ. Code § 1638........................................................................................... 14
22  Cal. Civ. Code § 1639........................................................................................... 14
23  Cal. Civ. Code § 1654........................................................................................... 13
24  Cal. Civ. Code § 1667........................................................................................... 11
25  Cal. Civ. Code § 1791(a)-(b)..................................................................................6
26  Cal. Civ. Code § 1792...............................................................................................7
27  Cal. Civ. Code § 1793.1(a)(1) ..................................................................................7
28  Cal. Civ. Code §§ 1790, et seq. ...............................................................................6

Cal. Civ. Code, § 1793.2(b) .......................................................................18

Cal. Civ. Code, § 1793.2(d) .......................................................................18

Cal. Code Civ. Proc. § 1286.2(a)(6) ...........................................................9

Cal. Code Civ. Proc. §§ 1281.85-1281.96 ..............................................9, 10

FEDERAL STATUTES

FAA, 9 U.S.C. § 1, et seq. ..........................................................................10

OTHER AUTHORITY

CACI No. 3201 ...........................................................................................18

CACI No. 3205 ...........................................................................................18

CACI No. VF-3203 .....................................................................................19

CACI No.VF-3200 ......................................................................................19

# I. INTRODUCTION

Plaintiffs Calvin Kalasho and Matthew Putrus (collectively, "Kalasho") oppose the motion of Defendant BMW of North America, LLC ("BMW") which seeks to compel Kalasho to arbitrate Kalasho's purely statutory consumer warranty claims, which are asserted *only* against BMW, based on an arbitration clause in a Motor Vehicle Lease Agreement ("Lease Agreement") between Kalasho and a different party, Irvine BMW ("Dealer").

It is undisputed that BMW is not a signatory to the Lease Agreement. BMW's contention that it is an intended third-party beneficiary of the Lease Agreement entitled to compel arbitration of these claims contradicts the clear and express terms of the applicable written contracts and thus must be rejected under general principles of California contract law. Also, under California law, the Lease Agreement is not necessary to, much less inextricably intertwined with, Kalasho's statutory claims. Thus, BMW cannot compel arbitration under an equitable estoppel theory.

Not only has BMW failed to meet its burden to prove the existence of an agreement pursuant to which BMW may compel Kalasho to arbitrate his warranty claims brought solely against BMW, but also, the arbitration provision that BMW seeks to invoke impermissibly purports to waive Kalasho's unwaivable rights to a neutral arbitrator selection process. For that additional, independent reason, this Court should deny BMW's motion.

# II. RELEVANT FACTS

On or about January 14, 2019, Kalasho leased a new 2019 BMW M5 ("Vehicle") for primarily personal, family or household purposes. Dkt. 1-3, Complaint ¶ 4.  The Vehicle was manufactured and/or distributed by BMW. *Id.*

Kalasho leased the Vehicle from Dealer, who is a person/entity engaged in the business of manufacturing, distributing or selling consumer goods at retail. *Id.* Kalasho is therefore a "Buyer" within the meaning of the Song-Beverly Consumer Warranty Act, Civil Code §§ 1790, *et seq.*  *Id.*; *see* Civ. C. § 1791(a)-(b).

1   On May 22, 2020, Kalasho filed a Complaint for Violations of Statutory

2   Obligations. Dkt. 1-3, Complaint. It asserts claims for violations of Civil Code

3   sections 1793.2(d), 1793.2(b), 1793.2(a)(3), 1791.2(a), 1791.1 and 1794, all of

4   which are provisions of the Song Beverly Act, and also a claim for violation of

5   Business and Professions Code section 17200, for unfair business practices. *Id*.

6   By operation of California law, the lease was accompanied by BMW's

7   implied warranty that the Vehicle is merchantable.  Civ. C. § 1792.

8   BMW also gave Kalasho an express written warranty covering the Vehicle

9   (the "Warranty"). ("Cline Decl.") ¶3 and **Exhibits 1 and 2** thereto, Warranty. As

10  required by California law, BMW "fully set forth those [express] warranties in

11  simple and readily understood language, which ***shall clearly identify the party***

12  ***making the express warranties***," namely BMW.  Civ. C. § 1793.1(a)(1) (emphasis

13  added). The Warranty clearly identifies the "WARRANTOR" as BMW, and only

14  BMW. Warranty at p. 2.

15  The Warranty informs Kalasho that he has the right, but not the obligation, to

16  arbitrate "a problem arising under a BMW NA written warranty." Warranty at p. 36.

17  The Warranty also clearly and expressly recites Kalasho's right to "assert[ ] in court

18  any rights or remedies" arising under the federal Magnuson Moss Warranty Act and

19  California's Song Beverly Act. Warranty at pp. 35-38.

20  The Lease Agreement is between Kalasho and Dealer. It clearly and

21  specifically identifies the parties thereto: (i) Kalasho, as "Lessee," and (ii) Dealer, as

22  "Lessor." It instructs that "'I,' 'me' and 'my' refer to the Lessee and 'you' and

23  'your' refer to Lessor or Lessor's assignee." Lease Agreement at p.1, ¶ 2. The Lease

24  Agreement also disclaims any warranty provided by Dealer. It recites that "[t]he

25  Vehicle is subject to the following express warranties. If the Vehicle is new, the

26  Vehicle is subject to the standard ***manufacturer's*** new vehicle warranty." Lease

27  Agreement at p. 3, ¶ 16 (emphasis added). The Lease Agreement makes clear that

28  Dealer is not a party to any warranty unless expressly listed in the Lease Agreement.

In bold, all capital letters, the Lease Agreement informs Kalasho:  **UNLESS A LESSOR'S WARRANTY IS DISCLOSED ABOVE** [and none is], **LESSOR, TO THE EXTENT PERMITTED BY LAW, (1) MAKES NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESED OR IMPLIED, AS TO THE VEHICLE… AND (2) MAKES NO WARRANTY OF MERCHANTABILITY….**" *Id.*

With respect to arbitration, the Lease Agreement clearly and specifically identifies the parties entitled to elect arbitration and the scope of the disputes that are subject to arbitration.  It states: "Either *you or I* may choose to have any *dispute between us* decided by arbitration and not in a court or by jury trial."  Lease Agreement at p. 6, ¶ 38 (emphasis added).

BMW relies on the fact that the Lease Agreement states that "'Claim' broadly means any claim, dispute or controversy… between me and you or your employees, officers, directors, affiliates, successors or assigns, or between me and any third parties if I assert a Claim against such third parties in connection with a claim I assert against you, which arises out of or relates to…. [the] condition of this Vehicle." Lease Agreement at p. 6, ¶ 38. However, the definition of Claim does not alter the Lease Agreement's plain and unequivocal limitation on *who* may elect arbitration; the right to elect arbitration is limited to "you or I," i.e., Kalasho or Dealer. Not only does the introductory language of the arbitration clause clearly state that "[e]ither you or I may choose to have any dispute between us decided by arbitration," but also, the same paragraph that "broadly" defines "Claim" goes on to state, in the very next sentence: "Any Claim shall, *at your or my election*, be resolved by neutral, binding arbitration and not by a court action." The meaning of terms "you" or "your" is limited by the express language of the Lease Agreement; those terms mean Dealer.

The Lease Agreement's arbitration clause also expressly disclaims application of *unwaivable* arbitrator disclosure and disqualification requirements under the

1  California Arbitration Act, Code Civ. Proc. sections 1280, *et seq*. ("CAA").[1] The

2  Lease Agreement states that "[t]he arbitrator will not be bound… by state or local

3  laws that relate to arbitration proceedings" and that any arbitration is governed by

4  the FAA "and not by any state law regarding arbitration." Lease Agreement at p. 6,

5  ¶ 38. It further provides that, to the extent any conflict exists between the applicable

6  arbitration administration's rules and the Lease Agreement, the Lease Agreement

7  controls. *Id*.

## III.

## EVEN IF BMW COULD INVOKE THE ARBITRATION CLAUSE, THE CLAUSE IS INVALID AND UNENFORCEABLE

11     Kalasho explains in greater detail in Section IV, below, that BMW is not

12  entitled to invoke the arbitration clause in the Lease Agreement.  But even if BMW

13  could do so, the arbitration clause is void and unenforceable because it purports to

14  waive Kalasho's unwaivable statutory right to select a neutral arbitrator.

15     The CAA imposes certain ethics and disclosure obligations on arbitrators,

16  including heightened disclosure obligations in consumer arbitrations, and entitles

17  parties to disqualify arbitrators based on those disclosures. Code Civ. Proc. §§

18  1281.85-1281.96. The CAA also entitles a party to vacate an arbitration award if an

19  arbitrator fails to make the required disclosures.  Code Civ. Proc. § 1286.2(a)(6).

20  The California Legislature imposed these procedural safeguards to ensure neutrality

21  in the selected arbitrator. "Precisely because arbitrators wield such mighty and

22  largely unchecked power, the Legislature has taken an increasingly more active role

23  in protecting the fairness of the process." *Azteca Constr., Inc. v. ADR Consulting,*

24  *Inc.*, 121 Cal. App. 4th 1156, 1165 (2004), citing *Moncharsh v. Heily & Blase*, 3

25  Cal. 4th 1, 12-13 (1992). Similarly, the rules of the arbitration service providers

---

[1]   As discussed below, these requirements are not preempted by the Federal Arbitration Act ("FAA").

1  identified in the Lease Agreement—JAMS and AAA—provide for certain

2  disclosures and procedures to seek disqualification. By contrast, the FAA does not

3  require an arbitrator, before or during his or her appointment or service, to make any

4  disclosures, nor does it permit a party to disqualify an arbitrator based on any

5  disclosures s/he makes. *See generally,* FAA, 9 U.S.C. § 1, *et seq*. Here, the Lease

6  Agreement not only provides that the FAA shall control, but also *expressly prohibits*

7  any application of the CAA.

8       As a threshold matter, the FAA does not preempt the CAA's procedural

9  safeguards ensuring selection of a neutral arbitrator. "In cases to which it applies,

10  the FAA has a 'limited preemptive effect' on state law. 'The FAA contains no

11  express pre-emptive provision, nor does it reflect a congressional intent to occupy

12  the entire field of arbitration.'" *Ovitz v. Shulman*, 133 Cal. App. 4th 830, 851

13  (2005). As the United State Supreme Court held, "[t]here is no federal policy

14  favoring arbitration under a certain set of procedural rules; the federal policy is

15  simply to ensure the enforceability, according to their terms, of private agreements

16  to arbitrate." *Volt Info. Sciences v. Leland Stanford Jr. U.*, 489 U.S. 468, 476 (1989).

17  The CAA's arbitrator disclosure and disqualification requirements (Code Civ. Proc.

18  §§ 1281.85-1281.96, 1286.2) are not "provision[s] designed to limit the rights of

19  parties who choose to arbitrate or otherwise to discourage the use of arbitration.

20  Rather, [they are] part of California's statutory scheme designed to enforce the

21  parties' arbitration agreements, as the FAA requires." *Cf. Cronus Investments, Inc.*

22  *v. Concierge Services*, 35 Cal. 4th 376, 393 (2005). Thus, even more so than the

23  CAA provision at issue in *Cronus*, which permits a state court to stay an arbitration

24  proceeding, the CAA provisions outlined above, which serve only to ensure full and

25  fair disclosure and a fair and impartial arbitrator, are not preempted by the FAA. *Id*.

26       Yet the Lease Agreement strips Kalasho of these rights and safeguards. It

27  expressly prohibits application of the CAA. Under general contract principles of

28  California law, a party may not waive by private agreement a law established for a

OPPOSITION TO MOTION TO COMPEL ARBITRATION

public reason. Civ. C. § 3513. And there can be no doubt that the CAA's procedural safeguards for ensuring selection of a neutral arbitrator are laws established for a public reason. *Azteca*, 121 Cal. App. 4th 1156, 1167 (regarding Code Civ. Proc. sections 1281.9, 1281.91 and 1286.2, "there is no doubt that these statutes were enacted primarily for a public purpose. As we have seen, the Legislature has gone out of its way, particularly in recent years, to regulate in the area of arbitrator neutrality by revising the procedures relating to the disqualification of private arbitrators and by adding, as a penalty for noncompliance, judicial vacation of the arbitration award.").

"Under general principles of California contract law, a contract is unlawful, and therefore unenforceable, if it is '[c]ontrary to an express provision of law' or '[c]ontrary to the policy of express law." *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.*, 6 Cal. 5th 59, 73, quoting Civ. C. § 1667.

## IV.

## BMW IS NOT ENTITLED TO INVOKE THE ARBITRATION CLAUSE IN THE LEASE AGREEMENT

### A.    FAA Principles

Under the FAA, "the first task of a court asked to compel arbitration of a dispute is to determine whether ***the parties*** [here, Kalasho and BMW] agreed to arbitrate ***that dispute*** [here, statutory warranty claims arising under California law and BMW's Warranty]." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985) (emphasis added). "The FAA reflects the fundamental principle that arbitration is a matter of contract.'" *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) ("an agreement to arbitrate is a matter of contract."). "[I]t is a cardinal principle that arbitration under the FAA 'is a matter of consent, not coercion.'" *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 55 Cal. 4th 223, 236 (2012), quoting *Volt Info. Sciences v. Leland Stanford Jr.*

1  *U.*, 489 U.S. 468, 479 (1989). "[A] party cannot be required to submit to arbitration

2  any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior &*

3  *Gulf Navigation Co.* 363 U.S. 574, 582 (1960); *see also First Options of Chicago,*

4  *Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

5      The party seeking arbitration bears the burden of proving the existence of an

6  arbitration agreement. *Pinnacle*, 55 Cal. 4th at 236. "Because arbitration is

7  fundamentally a matter of contract, the central or primary purpose of the FAA is to

8  ensure that private agreements to arbitrate are enforced ***according to their terms***."

9  *Momot v. Mastro* (9th Cir. 2011) (652 F.3d 982, 986 (emphasis added). "Generally,

10  the contractual right to compel arbitration 'may not be invoked by one who is not a

11  party to the agreement and does not otherwise possess the right to compel arbitration.'

12  *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993). Accordingly, '[t]he

13  strong public policy in favor of arbitration ***does not extend*** to those who are not parties

14  to an arbitration agreement.' *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277,

15  1287 (9th Cir. 2009) (citation omitted)." *Kramer v. Toyota Motor Corp.*, 705 F.3d

16  1122, 1126, U.S. App. LEXIS 2090, *9 (emphasis added). Similarly, though the FAA

17  "embodies the national policy favoring arbitration [citation]… the 'liberal federal

18  policy regarding the scope of arbitrable issues ***is inapposite***' when the question is

19  'whether a particular party is bound by the arbitration agreement [citation]." *Norcia*

20  *v. Samsung Telcoms. Am., LLC*, 845 F.3d 1279, 1291, 2017 U.S. App. LEXIS 956,

21  *26 (emphasis added).

22      The Ninth Circuit has quoted the Third Circuit with approval, as follows: "'The

23  district court, when considering a motion to compel arbitration which is opposed on

24  the ground that no agreement to arbitrate had been made between the parties, should

25  give to the opposing party the benefit of all reasonable doubts and inferences that may

26  arise.'" *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141,

27  1991 U.S. App. LEXIS 1505 (9th Cir. 1991), quoting *Par-Knit Mills, Inc. v.*

28  *Stockbridge Fabrics Co.*, 636 F.2d 51 (3d Cir. 1980); *see also Capitol City*

1  *Amusements v. Zamperla, Inc.*, 2018 U.S. Dist. LEXIS 36950, *5 (E.D. Cal. Mar. 6,

2  2018) ("When there is a genuine issue of material fact concerning whether the

3  agreement was ever formed, the court cannot decide as a matter of law that the parties

4  entered into an agreement to arbitrate," citing *Three Valleys* and *Concat LP v.*

5  *Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004 (applying summary

6  judgment standard)).

7      Under the FAA, courts "'apply ordinary state-law principles that govern the

8  formation of contracts' to determine whether an agreement to arbitrate exists."

9  *Norcia,* 845 F.3d at 1284, quoting *First Options*, 514 U.S. at 944.  Kalasho and BMW

10  agree that California law applies.

11  **B.    The Express Terms of the Lease Agreement and Warranty Refute**

12  **BMW's Third-Party Beneficiary Argument**

13      Kalasho submits that the implied warranty and Warranty are stand-alone

14  agreements pursuant to which BMW made the statutorily required commitments that

15  form the basis for all of Kalasho's claim. But even if this Court also considers the

16  Lease Agreement, it cannot ignore the Warranty. California law requires that

17  "[s]everal contracts relating to the same matters, between the same parties, and

18  made as parts of substantially one transaction, are to be taken together." Civ. C. §

19  1642. The Warranty clearly states that arbitration is voluntary at Kalasho's election

20  and that Kalasho retains his right to assert any claims arising under the Song-

21  Beverly Act *in court*. At best, the Warranty's unambiguous statements conflict with

22  BMW's proffered interpretation of the Lease Agreement's arbitration clause.

23  California contract law requires that this conflict be resolved against the drafter, and

24  not against Kalasho. Civ. C. § 1654.

25      Even if this Court disregarded California contract law and looked solely to the

26  Lease Agreement without considering the Warranty, the Lease Agreement does not

27  establish that the parties intended that BMW would have the right to require

28  arbitration of statutory warranty claims brought solely against BMW. "Under

1   California law, 'the test for determining whether a contract was made for the benefit

2   of a third person is whether an intent to benefit a third person appears from the terms

3   of the contract. If the terms of the contract *necessarily* require the promisor to confer

4   a benefit on a third person, then the contract, and hence the parties thereto,

5   contemplate a benefit to the third person.'" *Lanning v. BMW of North America,*

6   *LLC*, 2019 U.S. Dist. LEXIS 193118, *9 (S.D. Cal. Nov. 5, 2019), quoting *Souza v.*

7   *Westlands Water Dist.*, 135 Cal. App. 4th 879, 891 (2006) (emphasis added).

8   "'Generally, it is a question of fact whether a particular third person is an intended

9   beneficiary of a contract.'" *Lanning* at *9, quoting *Epitech, Inc. v. Kann*, 204 Cal.

10   App. 4th 1365, 1372 (2012). "The party seeking to compel arbitration bears the

11   burden of putting forward evidence affirmatively establishing its status as an

12   intended third-party beneficiary." *Lanning* at *9, quoting *Norcia,* 845 F.3d at 1291.

13       California contract law requires that "the intention of the parties" to a written

14   contract "is to be ascertained from the writing alone, if possible." Civ. C. § 1639.

15   The contract language controls if it is clear and explicit. Civ. C. § 1638. Here, the

16   language is clear and explicit. The right to elect arbitration under the Lease

17   Agreement rests *solely* with "you or I," which terms the Lease Agreement explicitly

18   defines as Dealer and Kalasho, respectively. That the Lease Agreement defines

19   "Claim" to extend to claims involving affiliates or third parties does not alter the

20   Lease Agreement's express limitation that only "you or I" have the right to elect

21   arbitration. Especially when taken together with the Warranty, the Lease

22   Agreement's express terms preclude a finding that Kalasho agreed that BMW would

23   have the right to require arbitration of Kalasho's statutory warranty claims asserted

24   against only BMW.

25       The Ninth Circuit reached the same conclusion. It held that "you and us"

26   language in an arbitration clause evidences the parties' intention to arbitrate disputes

27   only between the parties to the agreement containing the arbitration clause, and not

28   with other, even related, third parties. *Kramer v. Toyota Motor Corp.*, 705 F.3d

-14-

1122, 1128 (9th Cir. 2013) (affirming denial of motion to compel arbitration). Kalasho anticipates that BMW may attempt to distinguish *Kramer* by contending that the arbitration clause in *Kramer* did not expressly refer to third parties. That is not accurate. The agreement in *Kramer* provided that "[a]ny claim or dispute… between you and us or our employees, agents, successors or assigns, which arises out of or relates to… [the] condition of this vehicle, this contract ***or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)*** shall, at your or our election, be resolved by neutral, binding arbitration and not by court action." *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prods. Liab. Litig.*, 2011 U.S. Dist. LEXIS 162846, *14 (C.D. Cal. Dec. 20, 2011) (emphasis added). Thus, the Ninth Circuit's holding in *Kramer* is conclusive and binding in this case. Similarly, in *Vincent v. BMW of N. Am., LLC*, the Court held that the arbitration provision's language, "'at your or our election' ***limits who has the right to enforce the provision***." *Vincent,* No. 19cv6439 AS, 2019 WL 8013093, at *9-10 (C.D. Cal. Nov. 26, 2019) (emphasis added).

## C.     Equitable Estoppel Does Not Apply

In *Kramer*, the Ninth Circuit observed:

> Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are 'intimately founded in and intertwined with' the underlying contract, *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 221, 92 Cal. Rptr. 3d 534 (2009) (quoting *Metalclad Corp. v. Ventana Environmental Organizational Partnership*, 109 Cal. App. 4th 1705, 1713, 1 Cal. Rptr. 3d 328 (2003)), and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and 'the

1                           allegations of interdependent misconduct [are] founded in or

2                           intimately connected with the obligations of the underlying

3                           agreement.' *Goldman*, 173 Cal. App. 4th at 219.

4  *Kramer*, 705 F.3d at 1128-29. Notably, "this test is conjunctive, not disjunctive.

5  Equitable estoppel applies ***only*** when ***both requirements*** are satisfied." *Lanning*,

6  supra at *5-6, citing *Goldman v. KPMG, LLP*, 173 Cal. 4th 209, 219 (2009)

7  (emphasis added).

8       Here, neither requirement is satisfied. Kalasho need not rely on the terms of

9  the Lease Agreement in asserting his claims against BMW. Kalasho's statutory and

10  implied warranty claims are not intimately founded in and intertwined with the

11  Lease Agreement. Nor has Kalasho alleged substantially interdependent and

12  concerted misconduct by BMW and Dealer, much less alleged that such

13  interdependent misconduct is founded in or intimately connected with the

14  obligations of the Lease Agreement.

15       Rather, Kalasho's claims rise and fall with the Warranty given solely and

16  exclusively by BMW, and expressly disclaimed by Dealer, and by operation of

17  California's Song Beverly Act. Under California law, BMW's warranty obligations

18  are unilateral; they do not depend on or require a bilateral contract between BMW

19  and Kalasho. California warranty law and contract law are governed by different

20  sets of rules. *Norcia*, 845 F.3d at 1288. "Language in a written warranty agreement

21  is 'contractual' in the sense that it creates binding, legal obligations ***on the seller***

22  [citation] but a warranty does not impose binding obligations on the buyer." *Id*.

23  (emphasis added).

24       The Ninth Circuit's holdings in *Kramer* require rejecting BMW's equitable

25  estoppel arguments. In *Kramer,* the Ninth Circuit disagreed with the argument of car

26  manufacturer Toyota that the implied warranty arose by operation of the Purchase

27  Agreement and therefore was intertwined with the Purchase Agreement with the

28  dealer. The Court noted that, like the Lease Agreement here, the Purchase

1  Agreement "expressly differentiate[d] dealer warranties from manufacturer
2  warranties." The Ninth Circuit therefore concluded that plaintiff's implied warranty
3  claim "arises independently from the Purchase Agreements, rather than intimately
4  relying on them." *Kramer*, 705 F.3d at 1131.

5       The Court held to the same effect with respect to claims based on express
6  warranties. "Looking to California contract law, the correct analysis is whether
7  Plaintiffs would have a claim independent of the existence of the Purchase
8  Agreement… not whether the court must look to the Purchase Agreement to
9  ascertain the requested relief." *Kramer*, 705 F.3d at 1131-32. It ruled:

10          In order for Toyota's equitable estoppel argument to succeed,
11          Plaintiffs' claims themselves must intimately rely on the
12          existence of the Purchase Agreements, not merely reference
13          them. Toyota is correct that Plaintiffs' claims presume a
14          transaction involving a purchase of a Class Vehicle. The claims
15          do not, however, rely upon the existence of a Purchase
16          Agreement. For illustration, a consumer who purchased a vehicle
17          with cash instead of credit would still state a claim for which
18          relief could be granted, absent a Purchase Agreement.

19  *Kramer,* 705 F.3d at 1132.

20       The Ninth Circuit also pointed out the proper limits to applying the equitable
21  estoppel doctrine when a non-signatory seeks to invoke an arbitration agreement.
22  "The 'linchpin' for equitable estoppel is fairness." *Kramer*, 705 F.3d at 1133, citing
23  *Goldman*, 173 Cal. App. 4th at 220, and *Metalclad Corp. v. Ventana Environmental*
24  *Organizational Partnership*, 109 Cal. App. 4th 1705, 1713. The Ninth Circuit
25  observed that, in *Metalclad*, the plaintiff sued to enforce against a non-signatory the
26  written agreement that contained an arbitration clause, yet sought to repudiate the
27  arbitration clause. *Kramer*, 705 F.3d at 1133, citing *Metalclad*, 109 Cal. App. 4th at
28  1713. The *Metalclad* court agreed with the non-signatory's equitable estoppel

1  argument, observing "it would be unfair to allow [plaintiff] to avoid provisions in

2  the same agreement it sought to enforce." *Kramer*, 705 F.3d at 1134, citing

3  *Metalclad*, 109 Cal. App. 4th at 1717.

4        The Ninth Circuit then distinguished the facts in *Kramer* from *Metalclad*.

5  "[I]n this case, Plaintiffs do not seek to simultaneously invoke the duties and

6  obligations of Toyota under the Purchase Agreement, ***as it has none***, while seeking

7  to avoid arbitration. Thus, the inequities that the doctrine of equitable estoppel is

8  designed to address are not present." *Kramer*, 705 F.3d at 1134 (emphasis added).

9        Similarly, here, Kalasho does not seek to invoke the duties and obligations of

10  BMW under the Lease Agreement, ***as BMW has none***, while also seeking to avoid

11  the arbitration provision in the Lease Agreement. Rather, Kalasho seeks to invoke

12  the duties and obligations of BMW under the Warranty and the Song Beverly Act.

13  That the Lease Agreement is not essential, much less material, to Kalasho's claims

14  is further borne out by the elements Kalasho must prove to prevail. As the CACI

15  jury instructions and verdict forms establish, to prevail on his claims under the Song

16  Beverly Act based on an express written warranty, Kalasho need only prove: (1) that

17  he bought or lease a new motor vehicle that was distributed or manufactured by

18  BMW; (2) that BMW gave him the Warranty to the effect alleged in the Complaint;

19  (3) that the Vehicle had defects covered by the Warranty and that substantially

20  impaired its use, value or safety to a reasonable person in Kalasho's situation; (4)

21  that Kalasho delivered the Vehicle to BMW's authorized repair facility; (5) (a) that

22  the repair facility failed to begin repairs within a reasonable time and/or complete

23  repairs within 30 days and/or (b) that the Vehicle was not repaired despite a

24  reasonable number of opportunities; and, with respect to his request for replacement

25  or restitution, (6) that BMW did not replace the Vehicle. CACI Jury Instruction

26  3201 ("Failure to Promptly Repurchase or Replace New Motor Vehicle After

27  Reasonable Number of Repair Opportunities—Essential Factual Elements (Civ.

28  Code, § 1793.2(d)); CACI Jury Instruction 3205 ("Failure to Begin Repairs Within

1 | Reasonable Time or to Complete Repairs Within 30 Days—Essential Factual
2 | Elements (Civ. Code, § 1793.2(b)); VF 3200; VF 3203.

3 |     In short, Kalasho does not seek to enforce any aspect of the Lease Agreement,
4 | nor do his claims against BMW otherwise satisfy the high bar that California law
5 | sets before a Court may permit a non-signatory to compel arbitration under an
6 | equitable estoppel theory.

7 |

8 | DATED:  December 14, 2020       **CLINE, APC**

9 |

10 |

11 |                By:  s/*Brian K. Cline*

12 |                     Brian K. Cline

13 |                     brian@clineapc.com

14 |                     Attorneys for Plaintiffs CALVIN
KALASHO and MATTHEW PUTRUS